## SAMPSON *v.* HYDE & TR.

The disclosure of one summoned as a trustee, must in cases of doubtful expression be construed adversely to him; but this rule of construction does not authorize expressions which are reasonably plain to be wrested from their proper meaning. If he have received money under circumstances that would render him chargeable, he must be charged unless he states in his disclosure clearly matters of discharge.

Money advanced to pay the debts of the principal defendant, and joint debts of the defendant and another at the defendant's request, and board furnished at a reasonable rate under a general promise of payment, are proper matters of discharge; though the trustee was the son of the principal defendant, and was induced by other considerations than his promises of payment to render such aid.

FOREIGN ATTACHMENT. The trustee was the son of the principal defendant, and had received of the proceeds of the estate of a brother of the defendant who had died in Connecticut, sundry sums amounting in all with interest to $1,219.60.

He discharged himself by sundry sums of money which he had paid out for his father and at his request, of which part was the debts of the defendant alone, and the remainder the debt of one Abner Hyde, which the defendant was liable to pay. These sums amounted in all to $582.33.

He had also charged for the board and support of his father for twelve years, at the rate of $1.25 per week, the sum of $780.

Sampson *v.* Hyde.

It appeared from the disclosure that the defendant being poor came to live with his son, who was at the time possessed of but little property, and was induced to receive his father into the family from the apprehension that he might otherwise become a town charge. There was no particular agreement made between them respecting any compensation for the support or board to be furnished by the son to the father, nor was there any expectation on the part of the former of any remuneration, except that his father told him upon coming to his house to live, that if he outlived his brother in Connecticut, he expected to receive a portion of his property, and that if he ever did recover any thing from that source or any other, the trustee, the son, should have his pay, or so far as it would go, for money which he had paid or might pay for his father, as well as for boarding and supporting him.

It also appeared that after the decease of the defendant's brother before referred to, the trustee made a journey to the State of Connecticut for the purpose of recovering his effects, and that before his departure the defendant told him he might have whatever he should be able to obtain from that source.

*Fletcher*, for the plaintiff. When a trustee admits that he holds the property of the principal to a certain amount, subject to this process, it must clearly appear from his answers that he has just claims to an equal amount, before he can be discharged. *Lamb* v. *Franklin Manuf'g Co.*, 18 Maine 188.

Where one has performed services gratuitously for another, whose money comes into his hands, the former can not hold the money for this gratuity. The claim must be a legal one.

The statements in the trustee's answer are doubtful in their terms; the doubt should be set down against him. *Kelley* v. *Bowman*, 5 Mass. 201; 12 Pick. 383.

---
Sampson *v.* Hyde.
---

A large part of the claim is barred by the statute of limitations, and the plaintiff is entitled to the benefit of the bar. 9 Pick. 144.

The agreement between the principal and the trustee was fraudulent.

*Young*, and *Cooper*, for the trustee, cited *Hutchins* v. *Carleton*, 4 N. H. 469.

Woods, J. The trustee is undoubtedly shown to have received property under such circumstances as would render him chargeable in this process, unless enough appears from his disclosure, to show that he has a right to retain it by reason of just and equitable claims upon the principal for money advanced for board or other things.

On this head his disclosure is the only evidence in the case. It is his own language, and therefore according to the rule which prevails in analogous cases, must bear a construction adverse to himself, if its terms are of doubtful import. But this rule of interpretation does not go so far as to justify us in distorting his expressions, or seeking to attach to them a meaning which is foreign to their ordinary import. *Kelley* v. *Bowman*, 12 Pick. 387; *Lamb* v. *Franklin Manuf'g Co.*, 18 Maine 187.

It appears very plainly from the disclosure, that the trustee paid out for his father and at his request the several sums of money which he names. Some of these sums were debts against the father, the defendant alone, and others stood against him and another son, Abner Hyde, who had contracted them jointly.

It is not easy to see how these two classes of debts, or rather payments, can be distinguished from one another with reference to the right of this trustee to claim and enforce an indemnity against the defendant, who was liable himself for the whole amount, and who had requested and procured the trustee to pay them.

The important item of board amounting to $780, was the accumulation of twelve years, at the not unreasonable rate of $1.25 per week. The fact that the son received his father into his house from a laudable desire to save him from becoming a public burden, or from any humane consideration, and that he did not cherish a strong hope of being ultimately repaid for the trouble and expense of his maintenance, does not diminish the force of the fact that is distinctly brought out in the disclosure, that the old man from the first promised to pay him out of any means that he might afterward possess, and mentioned his expectations from the estate of his brother in the event of surviving him, as a possible source from which this reasonable obligation might be discharged.

The disclosure is very distinct to the point that the defendant promised to pay for the board and for the sums disbursed for him by the trustee. It also shows that when the son was to set forward upon his journey to Connecticut for the purpose of securing the property of the deceased relative, his father having furnished him with the necessary powers to act in his name, expressly told him that he might retain for his own use whatever he might obtain.

We are not to suppose words to be uttered without some significancy, and some purpose; and it is difficult to place any construction upon this language, unless we suppose that it was the intention of the defendant to make an appropriation of what might have descended to him from his brother, to the honest purpose to which he had consecrated it while it remained in contingency.

If that be a just inference to be drawn from the language used, of which we entertain no doubt, the objection of the statute of limitations fails; for here was an express assignment of a fund to pay an acknowledged debt.

There is no apparent ground for the suggestion of fraud or collusion between the trustee and the defendant, which has been made in the argument. If the trustee was a

creditor of the defendant before the money passed into his hands, it was consistent with honesty that they should unite in a purpose to give the trustee a preference over other creditors; and this is all that has been done.

The conclusion therefore is, that the trustee has fully accounted for all that he has received and must be discharged.

*Trustee discharged.*